# DECLARATION OF EMERGENCY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

I, Ruz Safai, hereby declare as follows:

## A. Authority and Standing

1. I am the Founder and CEO of OWN Your Hunger LLC., a Delaware limited liability company and a plaintiff in this action. I make this declaration based on personal knowledge to support our Motion for Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b).

## B. Timeline of Discovery and Immediate Irreparable Harm

2. March 25 - May 27, 2025: When EPG first became unavailable on March 25, 2025, we reasonably believed this was a temporary supply shortage. Epogee blamed "raw material lead times" and promised resolution by May 2025, stating they were "working diligently to put processes in place to avoid this in the future."

3. May 27, 2025: We first discovered the monopolistic nature of defendants' conduct when food industry news source nosh.com published an article announcing Defendants' acquisition of Epogee, which was immediately suppressed at defendants' request.

4. May 29, 2025: Epogee formally notified customers they would no longer accept orders following the acquisition, revealing that Defendants had already hoarded 24 months of EPG supply - far exceeding the 1-year shelf life of their protein bars and any legitimate business need.

5. Immediate Action: We filed this TRO motion within 6 days of discovering the true monopolistic nature of defendants' conduct, demonstrating prompt response to the emergency.

## C. Ongoing Escalating Daily Harm

6. Since learning of Defendants' systematic exclusionary scheme on May 29, 2025, our business has suffered accelerating harm including:

- Complete production shutdown of EPG-dependent product lines
- 4 employee layoffs starting May 21, 2025
- $12,000 in canceled orders and contracts
- Over 200 idle manufacturing hours
- $14,000 in inventory write-offs of partially produced goods
- Daily operational losses exceeding $2,000 that cannot be recovered

7. Time-Critical June 1 Deadlines: We have binding commitments to deliver products by June 1, 2025. Each day of delay results in irreversible contract breaches and permanent customer defection to competitors.

**D. Investment Harvesting and Bait-and-Switch Scheme**

8. Induced Reliance: For over five years, Epogee actively encouraged us to invest hundreds of thousands of dollars in R&D, manufacturing infrastructure, and product development specifically tailored to EPG, celebrating our innovations as market showcases while assuring continued access.

9. Sunk Investments: OWN Your Hunger LLC has $185,000 in sunk lifetime R&D investments for EPG-dependent products and fundamentally restructured our entire business model around EPG as our core competitive advantage.

10. Unconscionable Value Transfer: Defendants' acquisition constitutes a deliberate "bait-and-switch" scheme that eliminated the very brands whose investments elevated EPG's commercial success, creating an unconscionable transfer of value from actual innovators to the strategic acquirer.

**E. Smoking Gun Evidence of Anticompetitive Intent**

11. Peter Rahal's Confessions: In May 29, 2025 industry interviews, defendant Peter Rahal made direct admissions of anticompetitive intent:

- "CPG sucks—it does. It sucks because of the competition"  This demonstrates anticompetitive motive)
- "We will be taking all the supply" This is an explicit monopolization confession.
- "Given supply situation, cease supply" This indicates exclusionary intent.

12. Contradictory Statements: Rahal claimed David would run Epogee "at arm's length" while immediately contradicting this by stating "we need it to be serving David as a customer," proving the acquisition was designed for exclusive dealing.

13. Strategic Foreclosure: Defendants already controlled 90% of Epogee's business pre-acquisition, making this a systematic elimination of the remaining 10% of competitive access rather than legitimate business integration.

## F. Why Relief Cannot Wait for Hearing

14. Exponentially Accelerating Harm: Each day allows defendants to further entrench their monopoly through their hoarded supply while we and other competitors face irreversible business destruction.

15. Industry-Wide Elimination: Not counting our companies, at least five other known food manufacturing businesses are planning layoffs and closures due to EPG unavailability, demonstrating systematic competitive elimination.

16. Critical Window: Without relief within 5 business days, our business faces inevitable closure, and the competitive market structure that took years to develop will be permanently destroyed.

## G. Why Advance Notice Would Be Harmful

17. Pattern of Concealment: Defendants have demonstrated a pattern of coordinated concealment, including immediate suppression of the nosh.com article and misleading customers for over two months about the true nature of supply restrictions.

18. Notice Would Enable Further Harm: Advance notice would likely result in acceleration of exclusionary conduct, further hoarding of essential supplies, and concealment or destruction of evidence.

19. Defendants Already Aware: Defendants know of our position through formal communications since March 25, 2025, and public awareness of the dispute since May 29, 2025.

## H. Feasibility of Immediate Relief and No Legitimate Hardship

20. Proven Feasibility: Defendants can immediately restore access because they successfully provided EPG access for over 5 years without interruption before the exclusionary conduct, serving multiple customers simultaneously including larger incumbents.

21. Supply Available: Defendants' own admission of reserving significant EPG supply for itself and no one else proves immediate restoration is feasible without any operational constraints.

22. No Legitimate Business Justification: Reserving excessive supply (estimated a two years) far exceeds any reasonable business need and lacks any legitimate justification, especially given the 1-year shelf life of defendants' protein bar products.

## I. Public Interest Urgency

23. Essential Facility Control: EPG constitutes an essential facility developed over 18 years at $150+ million cost that competitors cannot practically duplicate, making defendants' denial of access particularly harmful to competition.

24. Market Structure Preservation: Each day of delay allows defendants to permanently eliminate competitors and entrench monopoly power, harming innovation and consumer choice in low-calorie food markets.

## J. Conclusion and Emergency Request

25. Emergency relief without notice is essential because:

- Daily irreparable harm is accelerating and cannot wait for hearing
- Advance notice would be futile and enable further concealment
- Immediate restoration is feasible using defendants' hoarded supply
- Public interest demands immediate preservation of competition and prevention of monopolistic entrenchment

WHEREFORE, I respectfully request this Court immediately grant the Temporary Restraining Order as the only means to prevent irreversible harm to competition and our business.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Ruz Safai
Ruz Safai
CEO, OWN Your Hunger LLC