# EXHIBIT 2



# Epogee Terms and Conditions of Sale

(Effective May 16, 2022)

1. **Applicability.** These Terms and Conditions of Sale ("**Terms**") apply to any purchase by a party (a "**Buyer**") of any form of Esterified Propoxylated Glycerol ("**EPG**"), either alone or mixed with other chemical compounds ( collectively, "**EPG Products**") from Epogee, LLC ("**Epogee**"). These Terms are incorporated by reference in each Purchase Order issued by a Buyer to Epogee. A Buyer accepts these Terms in any one of the following ways, whichever occurs first:

    · By sending a purchase order (a "**Purchase Order**") for EPG Products to Epogee;

    · By submitting instructions to Epogee to ship EPG Productsto the Buyer; or

    · By accepting or paying for EPG Products.

2. **Order Confirmations.** A Buyer's Purchase Order is binding on Epogee only when accepted by a written Order Confirmation issued by an authorized representative of Epogee (an "**Order Confirmation**").

3. **No Conflicting Terms.**

    (a) *No Conflicting or Additional Purchase Order Terms.* If Epogee accepts a Purchase Order by sending an Order Confirmation, that does not mean that Epogee accepts any provisions of the Purchase Order that are different from or additional to these Terms. Epogee expressly rejects any such different or additional provisions and considers them to be void, unless both of the following occur:

        · Such additional provisions appear on the face of the Purchase Order prior to acceptance of the Purchase Order by Epogee; and

        · Epogee's Order Confirmation specifically describes the different or additional provisions and states that they are accepted by Epogee.

    (b) *No Conflicting or Additional Internet Terms.* Any terms and conditions on a Buyer's Internet site are expressly rejected by Epogee, are not a part of the contract formed by the Purchase Order and Epogee's Confirmation and have no legal effect on Epogee.

    (c) *No Reference to Trade Practices or Other Discussions.* Trade custom, trade usage and past performance are superseded by these Terms and shall not be used to interpret these Terms. All other prior or contemporaneous representations, warranties, covenants or agreements between Epogee and a Buyer, or their representatives, with respect to the subject matter of the Purchase Order, the Order Confirmation or these Terms are superseded.

    (d) *Parts of the Purchase Agreement.* Unless there is a specific signed agreement between a Buyer and Epogee that supersedes or supplements some of these Terms, the agreement between the Buyer and Epogee arising from a Purchase Order (the "**Purchase Agreement**") consists only of the following:

        · The Buyer's Purchase Order;

        · Epogee's Order Confirmation of the Purchase Order; and

        · these Terms.

    (e) *Resolution of Conflicting Terms.* To the extent the Purchase Order, the Order Confirmation, these Terms and any other written agreement between a Buyer and Epogee contain conflicting terms, the order of precedence is as follows:

        · First, the Order Confirmation and, to the extent accepted by the Order Confirmation, the Purchase Order;

        · Second, any other written agreement between the Buyer and Epogee relating to the purchase; and

        · Third, these Terms.

4. **Price.** The price and currency stated in the Order Confirmation shall be considered to be the price and currency agreed between Buyer and Epogee for the sale of the EPG Products specified in the applicable Purchase Order. In case of multiple or future deliveries that are not subject to a single Order Confirmation, the price and currency of such deliveries are subject to revision by Epogee at any time as set forth in subsequent Order Confirmation(s) relating to such deliveries.

5. **Taxes**

    (a) *Responsibility for Payment of Taxes.* Unless otherwise expressly agreed in writing by Epogee and Buyer, the following rules apply:

        · Epogee's price for the EPG Products does not include any applicable tax, duty, excise, levy or charge (including value-added taxes) in any jurisdiction in relation to the EPG Products or the delivery of the EPG Products; and

        · Buyer is responsible for payment of all such taxes (excluding income taxes owed by Epogee on account of the sale of the EPG Products), duties, excises, levies or charges (including value-added taxes) which Epogee may be required to pay to any authority (national, state or local) upon the sale, production or transportation of the EPG Products.

    (b) *Determination of Tax Amount.* With respect to sales and use taxes, prior to delivery of EPG Products by Epogee, Buyer shall provide to Epogee either a valid direct pay authorization or a valid tax exemption certificate. If Buyer does not provide a valid direct pay authorization or a valid tax exemption certificate, Epogee may determine the appropriate sales and use taxes and invoice Buyer for such taxes if Epogee is required by applicable state law to collect and remit such taxes.

6. **Cancellation of Purchase Agreement.** When a Purchase Order has been received and accepted by Epogee with an Order Confirmation, Buyer may not cancel or amend the Purchase Agreement without Epogee's written consent, which Epogee may grant or withhold in its sole discretion. If Buyer is in default by failure to pay any previous invoice within credit terms at the expected date of shipment of the EPG Products or any part of the EPG Products, or if Epogee has received any adverse credit information about Buyer, Epogee may delay shipment and/or cancel the unshipped balance of the Purchase Agreement without liability. Epogee may also terminate any Purchase Agreement, in whole or in part, as of the date specified in a termination notice if Buyer does any of the following:

    · Violates any requirement of these Terms;

    · Files for bankruptcy, becomes or is declared insolvent, makes an assignment for the benefit of all or substantially all of its creditors, enters into an agreement for the extension or readjustment of substantially all of its obligations, or is the subject of any proceedings (not dismissed within 30 days) related to its liquidation, insolvency or the appointment of a receiver or similar officer for Buyer;

    · Takes any corporate action for Buyer's dissolution or winding-up; or

· Makes any material misstatement as to its financial condition.

7. **Packaging.** Epogee will package the EPG Products in either totes holding approximately 2,000-pound totes, 400-pound drums or 35-pound pails, as specified in the Purchase Agreement. Multiple pails or drums will be palletized.

8. **Shipment.** Epogee will use reasonable commercial efforts to ship EPG Products so they will be delivered to Buyer by the scheduled delivery date specified in a Purchase Order and accepted in the Order Confirmation. If no delivery date is included in a Purchase Order or accepted in the Order Confirmation, however, the scheduled shipping and delivery dates of EPG Products are at Epogee's discretion. Any delivery date(s) quoted are based on Epogee's best estimate of a realistic time when delivery to the carrier will be made and are not guaranteed. Claims by Buyer for shortages in shipment are waived unless made in writing to Epogee within 10 days from the date of the applicable invoice. If Buyer fails to take delivery of all or any part of the EPG Products shipped, Epogee may at its election and at Buyer's expense store, insure or otherwise protect such EPG Products or may resell them.

9. **Title and Risk of Loss.** Shipment of EPG Products will be F.O.B. Epogee's Midwest United States warehouse, or EPG Products may be picked up by Buyer at such warehouse or Epogee's designated manufacturing facility, in either case, as set forth in the applicable Purchase Agreement. The other terms of delivery or pick-up for the EPG Products will be as set forth on the applicable Purchase Agreement. Title and risk of loss shall pass to Buyer at the F.O.B. shipping point or upon pick-up of the EPG Products from such warehouse or manufacturing facility.

10. **Inspection.** Unless Buyer examines any EPG Products received within 10 days after receipt and notifies Epogee within 15 days after receipt of any claim that such EPG Products fail to conform to Epogee's applicable published specifications for such EPG Products (the "**Specifications**"), the EPG Products shall be deemed accepted as received by Buyer. Following receipt by Epogee of such a notice of nonconformance from Buyer, the following procedure will be followed:

    · Unless Epogee agrees that the EPG Products in question do not meet the applicable Specifications, then both Epogee and Buyer shall test (or re-test, as applicable) samples of the EPG Products to determine whether or not such EPG Products meet the applicable Specifications, and if the result of both parties' testing reveal that such EPG Products meet the applicable Specifications, then the EPG Products shall be considered to meet the applicable Specifications.

    · If Epogee's testing reveals that the EPG Products do not meet the applicable Specifications, then the EPG Products shall be considered not to meet the applicable Specifications.

    · If Buyer's testing reveals that the EPG Products do not meet the applicable Specifications, but Epogee's testing reveals that the EPG Products do meet the applicable Specifications, then the parties shall each send a sample of the EPG Products in question to an independent third-party laboratory mutually agreed upon by the parties, and the determination of the third-party laboratory shall be final and binding on the parties, with the costs of such third-party testing paid for by Buyer if the EPG Products in question meet the applicable Specifications and by Epogee if such EPG Products do not meet the applicable Specifications.

    · If the EPG Products are determined not to meet the applicable Specifications, then:

        o At Buyer's election and as Buyer's sole remedy, Epogee shall either refund the purchase price for the EPG Products or the EPG Products will be replaced by Epogee without any additional charge; and

        o Either (1) upon receipt of shipping instructions from Epogee, Buyer shall return to Epogee (at Epogee's expense) all such non-conforming EPG Products, or (2) upon receipt of instructions from Epogee to destroy the non-conforming EPG Products, Buyer shall destroy them and provide written proof to Epogee of the destruction of the EPG Products.

11. **Invoicing and Payment.** Epogee will submit invoices to Buyer for the amount due for the EPG Products shipped or otherwise delivered to Buyer. All invoices are due and payable within 30 days from the date of Buyer's receipt of the invoice. Epogee may at its option charge interest at the rate of 1% per month on the unpaid portion of any invoice not paid within 30 days from the date of Buyer's receipt of the invoice. Epogee will be entitled to reimbursement from Buyer for all costs and fees, including reasonable attorneys' fees, incurred by Epogee in the collection of overdue amounts. Until the unpaid contract price and any other amounts payable by Buyer to Epogee under the Purchase Agreement are paid in full, Buyer grants and Epogee will have a lien on the EPG Products for the unpaid amounts.

12. **Limited Warranty.** Epogee warrants that the EPG Products delivered to Buyer are free from all liens and encumbrances and were produced in compliance with applicable U.S. food safety laws and the regulations of the U.S. Food and Drug Administration (the "**FDA**") and Good Manufacturing Practices for food products, conform to Epogee's published Specifications for the applicable EPG Products and are certified as kosher. EXCEPT FOR THIS EXPRESS WARRANTY, EPOGEE DISCLAIMS ALL WARRANTIES WITH RESPECT TO THE EPG PRODUCTS, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

13. **Limitation of Liability.** The sole and exclusive remedy of Buyer for any liability of Epogee of any kind, including but not limited to liability under theories of contract, negligence, intentional tort or express or implied warranty, whether contained in these Terms, or in any additional terms that may be applicable, or imposed by law, is limited to the replacement by Epogee to the point of delivery as specified in the Purchase Agreement for the EPG Products claimed to be defective, following proper and timely rejection of such EPG Products, or at Epogee's option a refund to Buyer of the purchase price paid to Epogee for such EPG Products. Epogee is not liable to Buyer under any circumstances for any consequential, special, punitive or indirect damages of any kind, including, but not limited to, lost profits or opportunities.

14. **EPG Product Use Requirements.** Buyer must comply with the following requirements and restrictions in connection with Buyer's use of any EPG Products:

    · Buyer must use the EPG Products only for the manufacture of Buyer products to be sold in the United States, unless an additional or different territory is specified in the Purchase Agreement;

    · Buyer must use the EPG Products in a manner that conforms to applicable food safety laws and regulations;

    · Buyer must use labeling in connection with any food products produced with the EPG Products that conforms with the regulations and interpretations of the applicable governmental authorities and the information provided by Epogee to Buyer about interpretations of such regulations as they relate to the EPG Products;

    · Buyer must use the EPG Products only for the manufacture, marketing, sale or distribution of products of a type described in the Purchase Agreement applicable to the sale of such EPG Products;

    · Buyer shall not resell or otherwise provide (via samples or otherwise) any EPG Products to any third-party without Epogee's express written consent in advance;

    · Unless Epogee has given its prior written consent, Buyer shall not perform, directly or indirectly, or permit others to perform, either any analysis of the EPG Products for chemical composition or structure, or any replication of the EPG Products for any purpose.

15. **Buyer Indemnity.** Buyer shall indemnify and hold Epogee harmless from and against all liabilities, claims, or demands of third parties of any kind relating to Buyer's use of the EPG Products arising after Buyer's receipt of the EPG Products.

16. **Recalls.** If Buyer is directed to assist in any suspension of supply or recall of products containing EPG Products for any reason by Epogee or any governmental authority, Buyer shall cooperate and comply with all such reasonable directions to ensure the most effective response to the suspension or recall. The cost and expense of such suspension or recall will be borne by:

    · Epogee to the extent the costs and expenses are the result of Epogee's acts or omissions; and

    · Buyer to the extent the costs and expenses are the result of acts or omissions of Buyer, its directors, officers, employees, or contractors.

17. **Epogee Trademarks; Public Statements.** Epogee grants Buyer, for the sole purpose of marketing and selling food products containing the EPG Products sold by Epogee, a royalty-free, non-exclusive, non-transferable, non-sublicensable, limited license to use the trademark "Epogee" or any other trademarks, service marks, trade names and trade dress used from time to time by Epogee and relating to the EPG Products (including the goodwill associated with each), whether or not registered or existing as of the date of Buyer's receipt of the EPG Products under the Purchase Agreement. Buyer may not modify or alter any portion of Epogee's EPG trademarks or EPG Product descriptions without the prior written consent of Epogee. Any modifications to such EPG trademarks or EPG Product descriptions authorized by Epogee and made or developed by Buyer, either solely or jointly with Epogee, are the sole property of Epogee free of any additional royalty or other charge. Buyer shall use the "Epogee" brand name or Epogee's other trademarks only in accordance with the labeling and the directions for use provided by Epogee, and any goodwill arising from Buyer's use of Epogee's EPG trademarks will belong to and solely benefit Epogee. Buyer shall obtain Epogee's prior written consent before it issues any public statement

regarding its relationship with Epogee.

18. **Limited License of Buyer Trademarks.** As a condition to Buyer's purchase of EPG Products, Buyer grants to Epogee a royalty-free, non-exclusive, non-transferable, non-sublicensable, limited license to use Buyer's name and business logos, along with images, the brand names and any separate logos of Buyer's products containing EPG Products, for the sole purpose of marketing EPG Products through Epogee's advertising, literature, product demonstrations, presentations, interviews and websites.

19. **Other Intellectual Property; Epogee Indemnity.**

    (a) *Ownership.* As between Buyer and Epogee, Epogee is the sole owner of all technology, inventions, formulae, techniques, experimental data, trade secrets, know-how, patents, patent applications, derivative works, other improvements or modifications, copyrights, or other intangible legal rights pertaining to the EPG molecule or physical or functional properties of EPG ("**EPG Properties IP**"), whether or not they are filed, perfected, registered or recorded.

    (b) *Buyer Discoveries Regarding EPG Properties IP.* Any inventions or discoveries, whether or not patentable, which Buyer or any employee of Buyer may conceive or make, either alone or with others, relating to the EPG molecule or any of the physical or functional properties of EPG are the sole and exclusive property of Epogee, and upon Epogee's request and without compensation Buyer shall, and shall cause any applicable employee of Buyer to, disclose to Epogee or Epogee's designee all information with respect to such inventions or discoveries and promptly sign and deliver to Epogee any documents or take such actions which Epogee requests in order to apply for and obtain or transfer to Epogee all United States and/or of foreign patent rights for such inventions or discoveries or enforce Epogee's exclusive rights in such inventions or discoveries.

    (c) *Buyer Patents.* If Buyer applies for and is successful in obtaining any United States or foreign patent with respect to any modification of machinery, equipment, or manufacturing processes or specific formulation or combination of ingredients for the production of food products incorporating EPG to achieve a unique functionality or the successful implementation of EPG in such food products, then without any compensation from Epogee to Buyer, the owner of such patent shall grant Epogee a perpetual, non-exclusive, sub-licensable and royalty-free license for the right to operate under such patent in all fields involving the use of EPG in food.

    (d) *Indemnity.* Epogee shall indemnify and hold Buyer harmless from and against all liabilities, claims, or demands of third parties of any kind relating to patent or trademark infringement actions arising out of the production or sale by Epogee or use by Buyer of the EPG Products or any Epogee trademark used in connection with the EPG Products.

20. **Force Majeure.** Epogee is not liable for any delay in performance or non-performance caused by circumstances beyond its reasonable control, including, without limitation, acts of God, natural disasters, fire, flood, earthquakes, pandemic (including but not limited to the effects of COVID-19), epidemics, explosions, riots, wars, terrorism, civil disturbances, perils of the sea, labor disturbances (such as strikes, slow-downs or sabotage), machinery breakages, government actions, inactions or prohibitions, shortages of raw materials or utilities, delay in delivery or defects in goods supplied by Epogee's suppliers or subcontractors, and/or traffic stoppages. If for any reason (including but not limited to a force majeure event described above) Epogee is unable to supply the total demand for EPG Products, Epogee may distribute its available supply among any or all purchasers on such basis as it may deem fair and practical, without liability for any failure of performance which may result from such distribution.

21. **Electronic Contracting.** Buyer and Epogee agree to conduct their transactions under any Purchase Agreement by electronic means. Specifically:

    · Any Purchase Order, request for product information or other notice sent to Epogee by email from Buyer to an email address provided by Epogee for such purposes constitutes consent by Buyer and Epogee to the transaction of business by electronic means pursuant to the Uniform Electronic Transactions Act as adopted in Indiana and the federal Electronic Signatures in Global and National Commerce Act, both of which are made applicable to the Purchase Order, any Order Confirmation and these Terms.

    · Any Purchase Order sent by email and any Order Confirmation sent as provided in this paragraph, as well as any subsequent notices sent by Buyer or Epogee as provided in this paragraph to their respective email addresses are intended to be enforceable against and between Buyer and Epogee.

    · Any email address provided in a Purchase Order or otherwise provided to Epogee in a written notice from Buyer is the email address to which an Order Confirmation will be sent.

    · Each of Buyer and Epogee, at its own expense, shall provide and maintain the equipment, software, services and testing necessary to effectively and reliably transmit and receive email and shall use security procedures which are reasonably sufficient to ensure that all transmissions of email are sent by authorized personnel and that all of its business records and data are protected from improper access.

    · Buyer and Epogee are entitled to rely on an email sent from the other party's domain and may assume that it was sent by the individual whose reply email and signature is shown in the email, unless it would be unreasonable to do so from the content or context of the email.

    · Any symbol or identification of a sender of an email that is included in the body of the email is intended to be treated as an electronic signature of the sender, and each party adopts as its signature any electronic identification in an email consisting of symbol(s) or code(s) which are affixed to or contained in each document transmitted by such party.

    · Either Buyer or Epogee may elect to withdraw its consent to receive email notices under these Terms by giving the other party at least 10 days' advance written notice of such withdrawal. Any such withdrawal of consent does not affect any notices sent before the effective date of the withdrawal.

    · Buyer and Epogee agree that if the Purchase Order, the Order Confirmation or any other notice contemplated by these Terms or the Purchase Agreement is transmitted electronically, neither party shall contest the validity of the electronic document on the basis that it contains an electronic signature.

22. **General.** The following general provisions govern the Purchase Agreement and these Terms:

    · In the event of any dispute under the Purchase Agreement, the laws of the State of Indiana shall govern the validity, performance, enforcement, interpretation and any other aspect of this transaction, without regard to principles of conflicts of laws.

    · Buyer and Epogee agree that the United Nations Convention on Contracts for the International Sale of Goods is specifically excluded from application to any Purchase Agreement.

    · No waiver of any breach or violation of the Purchase Agreement will constitute or will be deemed to constitute a waiver of any other breach or violation, whether or not similar, nor will any waiver constitute a continuing waiver.

    · In the event of any adversarial proceedings between Byer and Epogee arising out of any Purchase Agreement, the prevailing party will be entitled to recover from the other party, in addition to any other relief awarded, all reasonable expenses the prevailing party incurs in such proceedings, including reasonable attorneys' fees and expenses and court costs.

    · Unless otherwise agreed in writing by Epogee, a Purchase Agreement and its obligations may not be assigned or delegated by Buyer, in whole or in part, without the prior written consent of Epogee. Buyer's unauthorized attempt to assign or delegate any such rights or obligations is void.

    · Each paragraph, sentence, clause, term and provision of a Purchase Agreement is severable and, in the event any portion of a Purchase Agreement is determined to be invalid or unenforceable, the remaining portions remain in full force and effect to the fullest extent permitted by law.



Case 1:25-cv-04544-VM    Document 4-7    Filed 06/02/25    Page 5 of 12



© 2016-2025 Epogee. Privacy Policy | Terms and conditions

# EPOGEE®

December 2, 2024

Dear Valued Customer,

In order to meet increasing demand for EPG and align this demand with commitments to our suppliers, beginning January 1, 2025, Epogee will require a 50% deposit before confirming all Purchase Orders (PO's) of 5,000 pounds of EPG or greater.  Since we manufacture EPG in campaigns, in order to ensure on time delivery of orders 5,000 lbs. and above, receipt of a PO and deposit 90 days before requested delivery date is required.

We will continue to ship smaller orders, less than 5,000 pounds of EPG, without a deposit and within our traditional lead time of as close to 7 to 10 business days as possible.

If you would like to make arrangements to ensure we have floor stock available for you, please contact me to discuss setting up a floor stock agreement.

If you have any questions, please do not hesitate to reach out.

Thank you,

*Jayme Caruso*

Jayme Caruso
Chief Commercial Officer
jcaruso@epogee.com

| | |
|---|---|
| **From:** | ruz@ownyourhunger.com |
| **To:** | Caruso, Jayme |
| **Subject:** | RE: [EXT] Future EPG access |
| **Date:** | May 27, 2025 8:30:00 AM |
| **Attachments:** | image002.png |

Hi Jayme,

Given the acquisition is now public information, would you be able to comment at this time specifically regarding the future availability of EPG for competitors of the David bar brand?



Peter Rahal's new protein bar brand David has closed a $75 million Series A round and taken a step towards vertical integration with the acquisition of Epogee, one of its ingredient suppliers.

The new tranche of funding was led by Greenoaks, with participation from Valor Equity Partners.

**Ruz Safai**

OWN Your Hunger

**From:** Caruso, Jayme <jcaruso@epogee.com>
**Sent:** May 23, 2025 10:14 AM
**To:** ruz@ownyourhunger.com
**Subject:** RE: [EXT] Future EPG access

Ruz,

Thanks for reaching out. I know things have been a bit crazy at Epogee for the past couple of weeks, and I apologize for that, but we should have a clear line of sight to our resolution sometime next week.

I will be sure to let you know about availability and timing before the end of the week.

Thank you again for your patience and understanding,

**Jayme Caruso**
**Chief Commercial Officer**
**Cell: +1 610.613.0815**

**6510 Telecom Dr, Ste 180**
**Indianapolis, IN 46278**
**www.epogee.com**



Confidentiality Notice: This e-mail, including any attachments, is intended only for the addressees and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of the information herein by anyone other than the intended recipient(s) is prohibited. If you have received this e-mail in error, please notify the sender at 610-613-0815 and destroy the original message and all copies.

**From:** ruz@ownyourhunger.com
**Sent:** Thursday, May 22, 2025 12:01 PM
**To:** Caruso, Jayme <jcaruso@epogee.com>
**Subject:** [EXT] Future EPG access

Hello Jayme,

I wanted to see if you are available for a brief meeting, which I can schedule with you via your usual link to schedule a meeting.

I imagine you are currently inundated with questions from numerous clients asking about the next shipment of EPG, but my sources tell me a significant deal now being finalized with a relatively new (but experienced) protein bar producer, to be formally announced in the next coming weeks.

Please let me know if you are available in the new few days (or even today, if at all possible) for a quick discussion about what we can realistically expect.

**Ruz Safai**
OWN Your Hunger

| | |
|---|---|
| **From:** | Egan, Lindsey |
| **To:** | ruz@ownyourhunger.com |
| **Cc:** | Caruso, Jayme |
| **Subject:** | RE: [EXT] OWN Your Hunger PO 385 |
| **Date:** | March 25, 2025 12:01:18 PM |

Ruz,

I am cc'ing Jayme into this email as well in case you have further questions.   Unfortunately, we are currently in a stock out situation with confectionery in all package types.  We are seeing some unexpectedly high lead times for our raw materials which has caused production delays.  I expect to have confectionery product for you in May.  Please advise if you want me to partially fulfill this order with spreadable and then let you know when confectionery is available, or if you want me to hold it all.

Again, we apologize, this is not the situation we want to be in and are working diligently to put processes in place to avoid this in the future.


**Best,**
**Lindsey Egan**
**VP Operations & Administration**
**Cell: +1 812.240.0988**
**Address: 6510 Telecom Dr Ste 180**
**Indianapolis, IN 46278**
**legan@epogee.com**
**www.epogee.com**



Confidentiality Notice: This e-mail, including any attachments, is intended only for the addressees and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of the information herein by anyone other than the intended recipient(s) is prohibited. If you have received this e-mail in error, please notify the sender at legan@epogee.com and destroy the original message and all copies. No employee or agent is authorized to conclude any binding agreement on behalf Epogee with another party by email without specific confirmation

**From:** ruz@ownyourhunger.com <ruz@ownyourhunger.com>
**Sent:** Tuesday, March 25, 2025 1:03 PM
**To:** Egan, Lindsey <legan@epogee.com>
**Subject:** [EXT] OWN Your Hunger PO 385

Hello Lindsey,

Please find attached a PO and Canada customs paperwork for:
- 2 drums of EPG-S
- 1 drum of EPG-C

And advise the earliest date we can schedule a pickup from Murphy Warehouse (BOL will be sent directly to Kristi Howe once you confirm the order).

Thanks!

**Ruz Safai**
OWN Your Hunger

# EPOGEE®

May 29, 2025

Dear Ruz,

I'm reaching out to share an important update. Following the acquisition of Epogee, LLC by David, we've been conducting a careful review of our capacity and long-term plans.

Due to ongoing supply chain constraints, we've made the difficult decision to wind down support for your account. While we will fulfill all confirmed purchase orders, we won't be able to accept new orders going forward.

We understand this may create challenges and apologize for any disruption. We're grateful for the partnership to date and wish you continued success.

Sincerest Regards,

*Jayme Caruso*

Jayme Caruso
Chief Commercial Officer
Epogee, LLC.