USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/17/25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OWN YOUR HUNGER LLC, LIGHTEN UP FOODS, and DEFIANT FOODS LLC<br><br>Plaintiffs,<br><br>- against -<br><br>LINUS TECHNOLOGY, INC., EPOGEE LLC, and PETER RAHAL,<br><br>Defendants. | **25-CV-4544 (VM)**<br><br>**DECISION AND ORDER** |

**VICTOR MARRERO, United States District Judge.**

Before the Court is plaintiffs OWN Your Hunger LLC ("OWN"), Lighten Up Foods, LLC ("Lighten Up"), and Defiant Foods, LLC's ("Defiant Foods", and, collectively, "Plaintiffs") motion for a temporary restraining order ("TRO") and preliminary injunction ("PI") pursuant to Federal Rule of Civil Procedure 65 ("Rule 65") against defendants Linus Technology, Inc., d/b/a "David Protein" ("David Protein"), Epogee LLC ("Epogee"), and Peter Rahal ("Rahal", and, collectively, "Defendants"). For the reasons below, the Court denies Plaintiffs' motion for a TRO and orders the parties to submit a briefing schedule on Plaintiffs' motion for a PI.

1

## I. BACKGROUND

Plaintiffs are three low-calorie food producers. (See "Complaint" or "Compl."[1], Dkt. No. 4 ¶¶ 4-6.) OWN produces low-calorie nut butter spreads and protein desserts (see "Safai Decl.", Dkt. No. 4-4 ¶ 10), Lighten Up produces low-calorie sauces (see "Sanburg Decl.", Dkt. No. 4-2 ¶ 10), and Defiant Foods produces low-calorie protein-based chocolate (see "Fugal Decl.", Dkt. No. 4-3 ¶ 10). All Plaintiffs utilize the ingredient esterified propoxylated glycerol ("EPG") - a patented fat replacement ingredient that reduces calories from fat by 92 percent – that is produced only by Epogee. (See Compl. ¶¶ 9, 17.) David Protein is a producer of low-calorie protein bars called David Bars that also contain EPG. Rahal is David Protein's controlling person. Epogee announced that it had been acquired by David Protein on May 29, 2025. (See Compl. ¶¶ 8, 10, 13, 42.)

On June 2, 2025, Plaintiffs commenced this action by filing their Complaint and Motion, along with supporting declarations and exhibits. (See Dkt. Nos. 4, 4-1 – 4-14.) Plaintiffs alleged that Defendants violated the Sherman Act §§ 1-2, 15 U.S.C. §§ 1-2, the Clayton Act § 7, 15 U.S.C. § 18,

---

[1] Plaintiffs filed a hybrid Complaint and motion for TRO and PI ("Motion" or "Mot."). Citations to the Complaint refer to pages one through nine and pages twelve through twenty of the filing at Dkt. No. 4. Citations to the Motion refer to pages nine through twelve of the filing at Dkt. No. 4.

2

and New York's Donnelly Act § 340, N.Y. Gen. Bus. Law. § 340 (McKinney), by orchestrating the acquisition of Epogee and using their resulting control of EPG to exclude competitors and create an artificial monopoly. (See Compl. at 1, ¶¶ 67-123.) Specifically, Plaintiffs alleged that Epogee maintained a reliable EPG supply for all qualified food manufacturers before its acquisition, but that after David Protein acquired it, Epogee informed its clients that it would no longer accept orders for EPG. (See id. ¶¶ 30, 42.) Plaintiffs pointed to statements made by Rahal as evidence of anticompetitive intent, such as an interview where Rahal said that David Protein "will be taking all the supply" of EPG. (Id. ¶ 44.) Further, Plaintiffs alleged that Defendants stockpiled Epogee's capacity to produce EPG for two years to ensure competitors had no access to EPG. (See id. ¶¶ 46, 49.)

Plaintiffs sought an *ex parte* TRO and PI enjoining Defendants from (1) restricting or denying EPG access to Epogee's existing customers who had access prior to March 25, 2025; (2) maintaining artificial supply shortages or hoarding EPG inventory beyond legitimate business needs; (3) withholding, hoarding, or restricting access to the EPG supply inventory currently under Defendants' control; (4) using claims of "pre-purchased" or "reserved" EPG supply to deny access to existing customers; (5) creating any form of

3

artificial scarcity through inventory manipulation or coordinated supply restrictions; (6) coordinating to restrict EPG supply or conceal material information regarding EPG availability; and (7) using EPG control to exclude competition in EPG-dependent food markets. (See "Proposed TRO", Dkt. No. 4-14.) Further, Plaintiffs sought a TRO and PI ordering Defendants to (8) immediately make available for purchase by existing EPG customers a proportional allocation of the EPG supply currently under Defendants' control; (9) restore EPG supply access under substantially similar terms and conditions as existed on January 1, 2025, including commercially reasonable pricing; (10) allocate EPG supply on a proportional basis among all qualified customers; (11) provide written notice to all existing EPG customers who had access prior to March 25, 2025, informing them of restored access and ordering procedures; and (12) accept and process EPG orders from existing customers. (See id.)

On June 4, 2025, this Court declined to grant Plaintiffs' sought TRO *ex parte* and ordered that Plaintiffs serve Defendants. (See Dkt. No. 11.) On June 11, 2025, Defendants filed a memorandum of law in opposition to Plaintiffs' Motion, ("Opposition" or "Opp'n", Dkt. No. 21), supported by a declaration of Zachary Ranen ("Ranen"), the president and co-founder of David Protein, ("Ranen Decl.", Dkt. No. 22).

4

Defendants argued that they could not be compelled to sell their patented product, and that Plaintiffs could use other fats and fat substitutes in their products. (See Opp'n at 9-12.) Moreover, contrary to Plaintiffs' assertion, Epogee continued to sell EPG to third parties, but had changed its business strategy to target buyers with the capacity to purchase higher volumes of EPG, since Epogee had never been profitable selling EPG to companies like Plaintiffs who sporadically purchased small quantities. (See id. at 11-12.) Further, Plaintiffs' predicament was of their own making, as they failed to secure long-term supply contracts for EPG. (See id. at 19.)

On June 13, 2025, the Court heard oral argument on the Motion. (See Minute Entry for June 13, 2025.)

## II.   LEGAL STANDARD

"The standard for an entry of a TRO is essentially the same as for a preliminary injunction." Free Country Ltd. v. Drennen, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016). A TRO, like a PI, "is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). A PI preserves the status quo and the rights of the parties until a final adjudication on the merits. See N. Am. Soccer League, LLC v. U.S Soccer Fed'n, Inc., 883 F.3d 32, 36 (2d Cir. 2018). The purpose of a TRO "is limited to

preserving the status quo and preventing irreparable harm 'just so long as is necessary to hold a hearing, and no longer,' such that the court will be able to provide effective final relief." Goldstein v. Hochul, No. 22-CV-8300, 2022 WL 20305832, at *1 (S.D.N.Y. Oct. 3, 2022) (quoting In re Vuitton et Fils S.A., 606 F.2d 1, 4 (2d Cir. 1979)).

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." N. Am. Soccer League, 883 F.3d at 37. "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." Sussman v. Crawford, 488 F.3d 136, 139 (2d Cir. 2007) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original)).

### III. DISCUSSION

Here, Plaintiffs have not demonstrated a likelihood of success or serious questions on the merits of their Sherman

6

Act §§ 1-2, Clayton Act § 7, or Donnelly Act claims because Plaintiffs have not plausibly defined the relevant product market, as (1) Plaintiffs do not grapple with the fact that EPG is patented and (2) Plaintiffs have not explained why a consumer would view their low-calorie sauces, nut spreads, and chocolates as reasonably interchangeable with David Bars.

All of Plaintiffs' claims require Plaintiffs to define the relevant geographic and product market in which Defendants' products compete and the alleged restraint of trade will be felt. The Sherman Act § 1 proscribes "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of [interstate] trade or commerce." 15 U.S.C. § 1. "To prove a Sherman Act Section One violation, a plaintiff must show first that there were 'concerted actions between at least two legally distinct economic entities' which evince 'a conscious commitment to a common scheme designed to achieve an unlawful objective.'"[2] Caruso Mgmt.

---

[2] Although a corporation, its wholly owned subsidiary, and its controlling officer cannot "conspire" to restrain trade, a "corporation's initial acquisition of control will always be subject to scrutiny under § 1 of the Sherman Act and § 7 of the Clayton Act." Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 777 (1984); compare Rochester Drug Co-op., Inc. v. Biogen Idec U.S., 130 F. Supp. 3d 764, 770 (W.D.N.Y. 2015) ("The Donnelly Act does not proscribe unilateral action, but only a 'contract, agreement, arrangement or combination' in restraint of trade.") (quoting N.Y. Gen. Bus. Law. § 340) with Reading Int'l, Inc. v. Oaktree Cap. Mgmt. LLC, 317 F. Supp. 2d 301, 333 (S.D.N.Y. 2003) ("The Donnelly Act has been used, though rarely, to prohibit mergers and acquisitions having anticompetitive effect, covered under section 7 of the Clayton Act.").

7

Co. Ltd. v. Int'l Council of Shopping Ctrs., 403 F. Supp. 3d 191, 201 (S.D.N.Y. 2019) (quoting United States v. Apple, Inc., 791 F.3d 290, 313, 315 (2d Cir. 2015)). Then, plaintiffs must show that the concerted action "constituted an unreasonable restraint of trade." Anderson News, LLC v. Am. Media, Inc., 899 F.3d 87, 97 (2d Cir. 2018) (internal quotation omitted). "Courts presumptively apply a rule of reason analysis to challenged agreements to determine whether they restrain trade." Fed. Trade Comm'n v. Shkreli, 581 F. Supp. 3d 579, 624 (S.D.N.Y. 2022). "[U]nder the rule of reason, a plaintiff must identify the relevant market that is subject to the restraint and then demonstrate the restraint's adverse effects on competition in that market." Caruso Mgmt., 403 F. Supp. 3d at 201.

The Sherman Act § 2, the Clayton Act § 7, and the Donnelly Act also require plaintiffs to identify the relevant market. The Sherman Act § 2 proscribes "monopoliz[ing] any part of the [interstate] trade or commerce," 15 U.S.C. § 2, and "has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966). The Clayton Act § 7

8

prohibits acquisitions when their effect "may be substantially to lessen competition, or to tend to create a monopoly," 15 U.S.C. § 18, and requires monopoly power in a defined market. See Saint Francis Hosp. & Med. Ctr., Inc. v. Hartford Healthcare Corp., 655 F. Supp. 3d 52, 68 (D. Conn. 2023) ([T]he standards of liability under [the Sherman Act and the Clayton Act] are largely the same."). Under the Donnelly Act, any contract, agreement, or arrangement that forms a monopoly or restrains competition in trade is illegal. See N.Y. Gen. Bus. Law. § 340(1). A party alleging a violation of the Donnelly Act must "(1) identify the relevant product market; (2) describe the nature and effects of the purported conspiracy; (3) allege how the economic impact of that conspiracy is to restrain trade in the market in question; and (4) show a conspiracy or reciprocal relationship between two or more entities." Altman v. Bayer Corp., 125 F.Supp.2d 666, 672 (S.D.N.Y.2000).

"Our Court defines the relevant market as all products reasonably interchangeable by consumers for the same purposes." Regeneron Pharms., Inc. v. Novartis Pharma AG, 96 F.4th 327, 338 (2d Cir. 2024) (internal quotation omitted). "To determine the boundaries of a product market, we look to 'the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and

9

substitutes for it.'" Id. at 339 (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 325 (1962)). "Two products are reasonably interchangeable where there is sufficient cross-elasticity of demand — that is, where consumers would respond to a slight increase in the price of one product by switching to another product." Id. (internal quotation omitted). When plaintiffs allege that a patent confers defendants monopoly power, the appropriate inquiry is whether there are "effective substitutes for the [product] which do not infringe the patent." Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 178 (1965).

In their Motion, Plaintiffs defined the relevant market as the "United States market for EPG supply," (Compl. ¶ 85), but at oral argument, Plaintiffs defined the relevant product market as that for low-calorie indulgence foods. If the relevant market is the United States market for EPG, Plaintiffs have not satisfactorily shown that there are no effective interchangeable substitutes that do not infringe the patent for EPG. Indeed, Plaintiffs' submission references a non-party protein-forward ice cream company that once used EPG in its products but reformulated, (see Ex. 4, Dkt. No. 4-8 at 12), and Defendants' Opposition lists competing protein bar manufacturers that do not use EPG, (see Opp'n at 10; Ranen Decl. ¶¶ 4-6). If the relevant market is the United States

10

market for low-calorie indulgence foods, Plaintiffs have provided no explanation as to why a consumer would respond to a slight increase in price of Plaintiffs' low-calorie sauces, nut spreads, and chocolates by switching to Defendants' protein bars. Plaintiffs instead focus on their products' and David Bars' purported tastiness and low calories, but whether products are reasonably interchangeable focuses on "the extent to which consumers are willing to substitute one for the other," and not "functional similarities" between the products. Regeneron Pharms. 96 F.4th at 340.

For the above reasons, Plaintiffs have not demonstrated a likelihood of success on the merits, and their motion for a TRO is therefore **DENIED**. Because Plaintiffs fail to satisfy one of the prerequisite standards to entitle them to injunctive relief under the Sherman, Clayton, and Donnelly Acts, the Court need not address the other elements of Plaintiffs' antitrust claims. See Daniel v. Am. Bd. of Emergency Med., 802 F. Supp. 912, 926 (W.D.N.Y. 1992) ("The determination of the relevant market is a threshold requirement in determining the merits of an antitrust claim.").

## IV. ORDER

For the reasons above, it is hereby

**ORDERED** that the motion of plaintiffs OWN Your Hunger LLC, Lighten Up Foods, LLC, and Defiant Foods, LLC's (collectively, "Plaintiffs") motion for a temporary restraining order (see Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that Plaintiffs and defendants Linus Technology, Inc., d/b/a "David Protein", Epogee LLC, and Peter Rahal (collectively, "Defendants") submit a proposed briefing schedule on Plaintiffs' sought preliminary injunction (see Dkt. No. 4) within thirty (30) days of the date of this Order.

**SO ORDERED.**

Dated:   June 17, 2025
         New York, New York

_____
Victor Marrero
U.S.D.J.