Tel. 202-550-5700
Email: bmeyer@tmdstrategies.com

July 9, 2025

VIA ECF

The Honorable Victor Marrero United States District Judge Southern District of New York 500 Pearl Street, Suite 1610 New York, NY 10007

Re: OWN Your Hunger LLC et al. v. Rahal. et al. Case No. 1:25-cv-04544-VM Request for In Camera Review

Your Honor:

      I represent Plaintiffs in the above-referenced matter and respectfully write to request that this Court conduct an in camera review of certain documents to verify representations made in connection with Defendants' opposition to Plaintiffs' motion for a temporary restraining order. Specifically, Plaintiffs seek review of documents relating to the 11 customers Mr. Ranen claimed would continue receiving EPG supply.

      By way of background, on June 27, 2025, Defendants' counsel sent Plaintiffs a pre-motion letter pursuant to this Court's Individual Rules, outlining their intention to move to dismiss the First Amended Complaint and extending an offer for Plaintiffs to file a Second Amended Complaint. Plaintiffs have accepted this opportunity and intend to file within a reasonable timeframe. However, while preparing the amended pleading and conducting additional investigation, Plaintiffs have discovered information that raises serious concerns about the accuracy of representations made to this Court.

      Based upon knowledge obtained during this investigation, Plaintiffs have reason to believe that this Court may have been materially misled. The Declaration of Zachary Ranen (Dkt. 22), submitted under penalty of perjury in opposition to Plaintiffs' TRO motion, states at Paragraph 22 that he "proactively contacted 11 then-active Epogee customers to confirm that we intended to continue fulfilling their orders" and that "10 [had] prospects of meaningful volume consistent with the business's new focus on achieving production scale and financial sustainability." Mr. Ranen further declared that Defendants "are selling to larger customers who can meaningfully expand the use of EPG over time."

      However, through subsequent investigation and direct communication with affected parties, multiple customers who have made large orders have confirmed receiving termination notices stating they could no longer place EPG orders. These customers, including some of Epogee's largest and longest-standing accounts, have provided sworn statements confirming they were terminated identically to Plaintiffs, receiving the same termination notices that effectively cut off all future EPG access, directly contradicting Mr. Ranen's sworn testimony.

1

Plaintiffs made good faith efforts to resolve this matter without burdening the Court. On two separate occasions, we attempted to address these discrepancies directly with opposing counsel. During a preliminary injunction scheduling conference, I raised concerns regarding the accuracy of the "11 customers" representation; defense counsel declined to respond substantively. Subsequently, on July 7, 2025, I transmitted a formal written request to opposing counsel identifying: (1) contradictory public statements by Defendants confirming exclusive EPG control, and (2) contradictory information received from six non-plaintiff companies confirming they had received termination notices.

The timeline of events during the July 7, 2025 inquiry is particularly troubling. Our formal request was transmitted at 10:46 AM Eastern Time. As of 4:09 PM, Defendants maintained public online platforms where they regularly communicated with customers about EPG availability. At 6:28 PM, we received Defendants' email response dismissing our inquiry as "premature" (Exhibit 1). Remarkably, at 7:12 PM – within 44 minutes of Defendants' counsel transmitting their reply - we discovered Defendants had systematically deleted their entire history of public communications from these platforms. This mass purge, documented in Exhibit 2 (p. 2-5), consisted of 56 posts and hundreds of comments and replies to customers regarding EPG supply that were all relevant to this investigation.

Defendants maintained business accounts on public platforms (particularly on the Instagram social media platform) where they responded to customer inquiries about EPG availability. Among the destroyed evidence was Defendants' direct response stating: "*Right now, no—EPG access isn't open to other companies*" [sic] (Exhibit 2, p. 1), a piece of evidence we were fortunate enough to have retrieved several days earlier. This specific public admission categorically contradicts Mr. Ranen's sworn declaration that Defendants were actively supplying multiple customers. Once deleted, such communications cannot be recovered by third parties, making this destruction tantamount to shredding business correspondence after learning of an investigation. *Lester v. Allied Concrete Co.*, 736 S.E.2d 699 (Va. 2013) (courts imposed substantial penalties for deleting social media evidence during litigation). Notably, Defendants deleted only their Instagram communications while fully maintaining their presence on other social media platforms (such as TikTok, Exhibit 2 p. 6), demonstrating a targeted destruction of the specific evidence containing damaging admissions about EPG access.

We assert that Defendants' position regarding these "11 customers" is either mathematically and logically impossible or deliberately misleading. Defendants cannot simultaneously maintain only three long-term supply agreements (Ranen Decl. ¶17), continue supplying ten "meaningful volume" customers (Ranen Decl. ¶22), and yet have sent termination notices to all non-affiliated customers. Mr. Ranen's declaration created the false impression of ongoing business relationships when all known non-affiliated customers - regardless of size, purchase history, or commercial importance - received identical termination notices.

This misrepresentation directly addressed Your Honor's concern during the TRO hearing regarding whether Defendants' conduct constituted anticompetitive behavior or legitimate

2

business strategy. The representation that "meaningful volume" customers would continue receiving EPG supply suggested limited competitive impact. We believe a truthful declaration would have revealed the complete elimination of all competitor access to an essential input for a market that Defendants have already defined (through recently discovered evidence that will be referenced in our Second Amended Complaint).

I respectfully request that the Court order Defendants to submit for in camera review within seven days:

1. The identities of all 11 customers referenced in Paragraph 22 of the Ranen Declaration.
2. Any supply agreements with these customers, or copies of termination letters transmitted to these customers (especially around May 29, 2025, when all other known non-party customers with sworn declarations received termination letters).
3. Documentation sufficient to establish whether each customer maintains an arm's-length relationship with Defendants or is affiliated with, controlled by, or has common ownership with any Defendant.

This request is urgent given Defendants' demonstrated willingness to destroy relevant evidence within 44 minutes of sending a reply regarding misleading representations. The narrow scope of the requested review, limited to communications with 11 specifically identified customers, makes in camera review the most efficient mechanism to verify whether this Court was misled. If these representations prove false, this Court should have complete and accurate information, particularly given that it previously relied upon Mr. Ranen's declaration in denying Plaintiffs' TRO motion. The integrity of the judicial process requires that decisions be based upon truthful testimony, and any material misrepresentations in sworn declarations must be promptly corrected.

For the foregoing reasons, Plaintiffs respectfully request that this Court order Defendants to produce the specified documents for in camera review within seven days. This narrow review will enable the Court to determine whether corrective action is necessary to ensure the integrity of these proceedings. I thank the Court for its consideration of this matter and remain available at the Court's convenience should any clarification be required.

Sincerely,

Brittany Meyer-Belnap

cc: All counsel of record (via ECF)