FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP



Direct Line: +1.212.859.8455
Email: peter.simmons@friedfrank.com

July 11, 2025

<u>*Via ECF*</u>
Hon. Gabriel Gorenstein
United States District Court for the
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *OWN Your Hunger v. Rahal,* No. 1:25-cv-4544-VM (S.D.N.Y.)

Dear Judge Gorenstein:

This matter has been referred to you by Judge Marrero.  Dkt. 36.  Plaintiffs' letter motion dated July 9, 2025 (Dkt. 35) requesting the Court to conduct *in camera* review of select categories of documents that they imagine may be interesting but that they currently have no right to obtain in discovery is as inappropriate as it is procedurally defective.  It is not the Court's role to conduct discovery for a party; nor can a plaintiff jump the gun on discovery before they even have an operative pleading defining the contours of the case.

The Federal Rules of Civil Procedure prescribe a process for the orderly progression of a case, the first step of which is a requirement that the plaintiff plead a legally cognizable claim which, if the allegations were proven, could be the basis for relief.  Plaintiffs here still have not passed this critical first hurdle.

Judge Marrero's ruling denying the requested TRO concluded (among other things) that plaintiffs' product market definition in their first complaint failed as a matter of law.  Dkt. 27 at 6-7.  The plaintiffs then filed an amended complaint (Dkt. 30), and the defendants explained why that pleading, too, was inadequate in its product market definition (Dkt. 31).  Plaintiffs replied that they plan to file a second amended complaint (supposedly by July 21) in the hope that the third time is the charm.  Dkt. 35-1 at 2.  In the interim, they asked the defendants to participate in discovery voluntarily, which the defendants declined on the ground that, as the Supreme Court has noted repeatedly (particularly in antitrust cases), the plaintiffs must first articulate a legally viable claim and do not get to take discovery as a means to figure out what claim (if any) they can plead.  *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007) (in antitrust action, discovery not warranted where "there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint"); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 686 (2009) (where a "complaint is deficient under Rule 8, [the plaintiff] is not entitled to discovery"); *Podany v. Robertson Stephens, Inc.,* 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) ("[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim.").

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Hon. Gabriel Gorenstein     -2-     July 11, 2025

Frustrated by their inability to obtain premature discovery themselves, the plaintiffs' new request for *in camera* review essentially asks the Court to conduct discovery for them — and before any viable complaint has been filed or tested by motion. The request should be denied.

Plaintiffs seem to be mounting an after-the-fact collateral attack on the TRO submissions, suggesting that perhaps the Court would have come to a different conclusion in its TRO ruling if other facts had been presented. That is not just speculation but seems to be a backdoor way of urging the Court to reconsider its ruling. But motions for reconsideration are disfavored and require a showing of controlling law or fact that "were put before [the Court] on the underlying motion" and that the Court overlooked. *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000); *accord Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003). They are not an invitation for the losing party to try "plugging the gaps of the lost motion." *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988).

Plaintiffs have not identified anything that the Court overlooked. Instead, they seem to want the Court to conduct an independent inquest as to whether other facts might have been relevant or should have been adduced, which is inappropriate. In any event, a motion for reconsideration must be filed within 14 days and cannot involve the presentation of additional evidence (Local Rule 6.3), so if that is what the plaintiffs are seeking, it is both untimely and procedurally defective.

Equally dispositive, the Court's TRO ruling hinged first and foremost on a legal determination — the inadequacy of plaintiffs' own product market allegations. Discovery about the defendants' sales communications to third parties is not required to assess that issue.

Third, plaintiffs' allegations of misrepresentations to the Court are baseless. Given its new strategy of "selling to larger customers," as explained in the Ranen TRO declaration, David Protein sent customers with "prospects of meaningful volume" assurances of a continued commercial relationship rather than termination notices. *See* Dkt. 22 ¶ 21-22. That the identity of these customers is not known to plaintiffs (Dkt. 35 at 2) does not remotely suggest any dishonesty. As Mr. Ranen explained, "due to ongoing supply chain constraints we plan to supply EPG to third-party customers so that we can pursue our growth strategy for Epogee in tandem with growing David Protein," though "we are currently unable to meet even our full near-term production needs" for EPG. *See* Dkt. 22 ¶ 25.

There is no inconsistency between Mr. Ranen's statement in his declaration that "[w]e are selling to larger customers who can meaningfully expand the use of EPG over time" and social media comments acknowledging that, due to supply constraints, there is currently insufficient supply to serve customers other than David Protein. *See* Dkt. 22 ¶21; Dkt. 35 at 2. Indeed, in the sections of the social media posts that plaintiffs attached but failed to quote, David Protein said "The move to acquire Epogee ***wasn't about eliminating options*** – it was about stabilizing ours. Demand surged, and securing EPG ensured we could scale without compromise. ***Broader access isn't off the table***, but delivering on our standard comes first."

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Hon. Gabriel Gorenstein                          -3-                          July 11, 2025

Plaintiffs also selectively quote the statement that EPG access is not presently broadly available to other customers but strategically omit from their letter the balance of the corporate statement: "The acquisition was strategic: demand for our bars outpaced supply, and securing Epogee ensured we could scale without compromise. ***We didn't buy EPG to gatekeep*** – we did it to execute. The Standard [our core product] comes first." Dkt. 35-2 at 2.

This is utterly consistent with Mr. Ranen's declaration in opposition to the TRO motion, completely economically rational, and in no way supports plaintiffs' reckless allegations that David Protein and Epogee somehow misled the Court.

Finally, there is no factual basis for plaintiffs' wild accusation of spoliation. Plaintiffs essentially argue that David Protein is required to keep its social media and advertising postings static, for plaintiffs' benefit, during the pendency of the litigation. Defendants are only required to preserve evidence – which they have done – not make it available to the general public on the internet. See *Thurmond v. Bowman*, 199 F. Supp. 3d 686, 691–92 (W.D.N.Y. 2016) (denying spoliation sanctions where moving party had not even "serv[ed] a discovery demand" and party's "postings were merely hidden from... view"). Defendants are not barred from altering their website, online marketing or any other media campaigns during this litigation, as long as archive copies remain available for potential discovery down the road. Indeed, if plaintiffs were right that every social media post must remain active indefinitely, then plaintiff Lighten Up Foods, LLC would itself be guilty of spoliation since it has repeatedly used Instagram's Stories tool to post commentary relevant to this litigation but ***that automatically disappear from view after 24 hours.*** We assume that Lighten Up Foods is complying with its preservation obligations with respect to those evaporating postings, just as David Protein and Epogee are, but there is no basis to hold defendants to a different requirement about the use of social media than plaintiffs use in their own businesses.

If plaintiffs eventually manage to submit a legally viable complaint that can withstand a Rule 12(b)(6) challenge, there will be plenty of opportunity for discovery to test not only the facts articulated by the parties in connection with the prior TRO motion but, consistent with Rule 26, other matters relevant to a claim or defense. But until then, they do not get to conduct discovery in search of a legal theory to assert, and they certainly do not get to co-opt the Court into conducting discovery for them.

Respectfully submitted,

Geoffrey S. Berman                                          Peter L. Simmons

cc:       Brittany Meyer-Belnap (via ECF)