

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Direct Line: +1.212.859.8455
Email: peter.simmons@friedfrank.com

July 30, 2025

<u>*Via ECF*</u>

Brittany Meyer-Belnap, Esq.
1121 14th Street NW #1010
Washington, D.C. 20009

Re:   ***OWN Your Hunger v. Rahal,*** **No. 1:25-cv-4544-VM (S.D.N.Y.)**

Counsel:

We write pursuant to Rule II.B.1 of Judge Marrero's Individual Practice Rules to outline why the Second Amended Complaint ("SAC", Dkt. 41), like the prior two complaints, is subject to dismissal for failure to state a legally viable claim. The SAC does not address the deficiencies identified by the Court in its June 17 order denying plaintiffs' TRO motion and which led the Court to conclude that the claims are unlikely to succeed. Dkt. 27 ("Order") at 6-12. Nor does it address the problems outlined in defendants' pre-motion letter pertaining to the first amended complaint, *see* Dkt. 31, which you said you would attempt to cure with this most recent pleading.

### I.   Plaintiffs Still Have Not Adequately Alleged a Relevant Product Market

The Court ruled that plaintiffs are not likely to succeed on a claim predicated on a single ingredient market of "the United States market for EPG supply" (Order 7, 10). Yet the SAC persists in that failed definition, broadening it variously to "the global supply of EPG," the "global market for EPG supply," and "the upstream market for EPG supply" (¶¶ 8, 140, 142). Seeking to respond to the Court's admonition that they need to address the question of "reasonably interchangeable" products "for the same purposes" "that do not infringe the patent[s] for EPG" (Order 9, 10), the SAC urges that EPG offers a "unique combination" of taste, texture, fat calorie reduction and consumer acceptance. ¶¶ 148, 162, 164-65, 184. This argument suffers from the fallacy of presupposing that other products are only reasonably interchangeable if they provide all the same benefits in all the same proportions as EPG – such as 92% fat calorie reduction, texture, taste, heat stability/melting point, and binding properties. *Id*. That is not the law.

In *Bayer Schering Pharma AG v. Sandoz, Inc*., 813 F. Supp. 2d 569, 577-78 (S.D.N.Y. 2011), the court rejected the idea that because there is only one molecule that performs the dual functions that the plaintiff wanted to see in its product, that molecule must be the market. The court noted that the market has to be broader than the one molecule – or here, one ingredient, EPG – when multiple alternatives exist for each of the separate functions that molecule performed. Similarly, in *BV Optische v. Hologic*, 909 F. Supp. 162, 172 (S.D.N.Y. 1995), the court rejected the plaintiff's argument that the relevant market was the market for a new x-ray technology that allowed a doctor to do in one x-ray what previously required two x-rays. And in *Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 554 (S.D.N.Y. 2007), the court rejected the idea that there is a special market for one-ply paint rollers – either in general or produced in the specific way the defendants manufactured their paint roller.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Brittany Meyer-Belnap, Esq.  -2-  July 30, 2025

The SAC is littered with references to EPG substitutes. It compares the prices of EPG and "traditional fats" (SAC ¶¶ 14, 168), states that "EPG is a fat replacement ingredient" (¶ 36), calls EPG a "solid alternative fat" (¶ 42), describes how EPG competes with Olestra (¶ 46), alleges that "**comparable protein bars without EPG**… are sold in the same retail channels where David Protein [bars] are sold" (¶¶ 115, 170), describes "nut butters, palm oil, palm kernel oil, [and] canola oil" as examples of "conventional fat options" (¶ 160), and explains that large agricultural product companies "dominat[e]" the market for "fat and fat alternative[s]" in which EPG competes (¶ 173). Similarly, plaintiffs allege that EPG maintains the "taste, texture, mouthfeel, and functional properties of traditional fats" (¶ 36) – for which EPG is a substitute.

Indeed, while offering the naked conclusion that "EPG has no substitutes" (¶ 162), the SAC actually details how each of the plaintiffs, as well as other manufacturers who submitted declarations, **in fact substituted** EPG for traditional fats in everything from nut butter spreads (OWN Your Hunger) to chocolate (Defiant Foods) to sauces (Lighten Up Foods), potato chips (Snack Owl) and confections (Swedian Foods) to try to differentiate their own products. It also explains how Nick's Ice Cream reformulated its products without EPG (¶¶ 121-23). Because the SAC excludes "reasonably interchangeable products" from its market definition, it is "legally insufficient." *Planetarium Travel, Inc. v. Altour Int'l Inc.*, 97 F. Supp. 3d 424, 428 (S.D.N.Y. 2015); *see also Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008).

As before, plaintiffs urge that EPG should be seen as its own single ingredient market because they prefer that ingredient's properties as it helps them differentiate their own products from competition in their respective downstream markets for chips, nut butters, chocolates and the like. *E.g.*, Walia Decl. ¶ 11 (facilitated his "product's health claims"); Krug Decl. ¶ 14 (important to his company's claim to "authentic-tasting, low-calorie" brownies); Kwak Decl. ¶ 3 (important to his company's "authentic-tasting cookies, muffins, puddings, and brownies with fewer calories"). But no matter how much they tout the properties of the ingredient that make it attractive to manufacturers or consumers, *e.g.*, SAC ¶ 2 (describing EPG's attributes as "unique among fat replacements"),[1] and as noted in the examples above, courts have repeatedly rejected claims that a market consists of a single ingredient. *See also United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 394 (1956). Here, other products are "reasonably interchangeable ... for the same purposes" as EPG. *Id.* at 395.

The cases plaintiffs previously relied upon (Dkt. 34) in response to defendants' prior pre-motion letter involved drugs that were the only FDA-approved drug on the market to treat certain diseases and thus had no substitutes. *See New York ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638, 652, 653 n.27 (2d Cir. 2015) (explaining that "the parties d[id] not dispute that Defendants possess[ed] monopoly power" over a market consisting of certain Alzheimer's drugs where all other drugs were "**not substitutes… because they perform[ed] different medical functions and [we]re not designed to treat moderate-to-severe Alzheimer's disease**"); *F.T.C. v. Shkreli*, 581 F. Supp. 3d 579, 630 (S.D.N.Y. 2022) (a single brand of a product or service may be a relevant market under the Sherman Act only "**if no substitute exists for that brand's products**

---

[1]   Of course, any patented product is by definition unique in some respect. Novelty and non-obviousness are statutory requirements for patentability.  35 U.S.C. §§ 102, 103.

Brittany Meyer-Belnap, Esq.                    -3-                          July 30, 2025

*or services*"; there was no substitute for pyrimethamine because it was "the only FDA-approved drug that specifically targets toxoplasmosis"). Those cases make clear that where there **are** substitutes, such as here, plaintiffs cannot ignore those substitutes when defining the relevant product market. *Accord Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997) (Sotomayor, J.) (concluding that "[t]ickets on TWA are reasonably interchangeable with tickets on other airlines" even though "[a] consumer might prefer flying TWA because a flight from City X to City Y leaves at a better time in the afternoon, or has better other terms, than the same flight from City X to City Y on Continental").

### II. Antitrust Liability Cannot Be Predicated on an Economically Rational Refusal to Sell a Patented Product

"As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pacific Bell Tel. Co. v. Linkline Comm's*, 555 U.S. 438, 448 (2009). Even the decision to cease supplying a product to third parties who once had access generally is not a violation of the antitrust laws unless it is "irrational" with "**no** possible efficiency justification." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074-75, 1077 (10th Cir. 2013) (Gorsuch, J.). Plaintiffs do not come close to alleging irrationality. Plaintiff's own SAC attaches an exhibit showing that "[t]he move to acquire Epogee wasn't about eliminating options – it was about stabilizing ours. Demand surged, and securing EPG ensured we could scale without compromise. Broader access isn't off the table, but delivering on our standard [the David bar product] comes first." Dkt. 41-17 at 8.

The "narrow exception" for refusal to deal set forth in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585 (1985) (cited in plaintiffs' prior response) "is at or near the outer boundary of [Sherman Act] liability." *Verizon Communs., Inc. v. Trinko*, 540 U.S. 398, 409 (2004). That narrow exception does not apply here because, "in contrast to the facts in *Aspen Skiing*, [p]laintiff[s] and [d]efendants are not the only participants in the relevant markets" for fats and fat substitutes. *Arcesium, LLC v. Advent Software, Inc.*, 2021 WL 1225446, at *6 (S.D.N.Y. Mar. 31, 2021). Plaintiffs' contention that a refusal to deal representing a change in corporate strategy following an acquisition is unlawful is baseless given that "vertical integration, even by a monopolist, does not offend" the antitrust laws. *See Alpert's Newspaper Delivery Inc. v. The New York Times Co.*, 876 F.2d 266, 269 (2d Cir. 1989) (newspaper did not unlawfully restrain trade by entering into home delivery business).

Moreover, despite the Court's observation that plaintiffs did not "grapple with the fact that EPG is patented" (Order 7), the SAC still does not solve for this undisputed fact. The SAC alleges that defendants should be liable for not selling EPG to plaintiffs because there are no effective, "non-infringing alternatives" for EPG and because Epogee previously "granted access to its patented EPG technology." SAC ¶¶ 175, 178. However, these allegations at most describe a patentholder exercising its lawful power to exclude and do not state an antitrust claim. *See F.T.C. v. Actavis, Inc.*, 570 U.S. 136, 147 (2013).

Plaintiffs tried three times to plead a viable complaint. Even with the benefit of the TRO briefing, oral argument, the Court's ruling, and our prior pre-motion letter, the SAC still does not allege a legally viable product market or cure these other deficiencies. After three strikes, the

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Brittany Meyer-Belnap, Esq. -4- July 30, 2025

plaintiffs should be out. Defendants therefore intend to request a pre-motion conference to discuss their proposed motion to dismiss the SAC, which should be dismissed with prejudice.

Very truly yours,

Geoffrey S. Berman                                          Peter L. Simmons


cc:     Hon. Victor Marrero (via ECF)