UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OWN YOUR HUNGER LLC, LIGHTEN UP FOODS LLC, DEFIANT FOODS LLC,<br><br>*Plaintiffs*,<br>v.<br><br>LINUS TECHNOLOGY, INC., EPOGEE LLC, PETER RAHAL,<br><br>*Defendants.* | Case No. 1:25-cv-04544-VM |

**DECLARATION OF BLAKE SANBURG IN SUPPORT OF PLAINTIFF'S THIRD AMENDED COMPLAINT**

I, Blake Sanburg, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

**A. Introduction and Background**

1. I am the Founder and Chief Executive Officer of Lighten Up Foods LLC ("Lighten Up Foods"), a Delaware limited liability company that develops and markets various health-conscious products, including low-calorie sauces and high-CFP protein bars. I have held this position since the company's founding and have direct knowledge of all matters discussed in this declaration.

2. I submit this declaration to describe my company's experience with EPG (Esterified Propoxylated Glycerol), our complete dependence on this ingredient, our development of a high-CFP protein bar for launch in mid-to-late 2026, and the devastating impact of losing access to EPG after Defendants' acquisition of Epogee LLC.

3. I have reviewed the Third Amended Complaint and incorporate by reference the factual allegations contained therein.

4. I have over 500,000 followers on social media and have analyzed and published reviews for nearly a hundred food products by their ratio of calories from protein, with a substantial focus on protein bars. Lighten Up Foods' entire business model is built around creating and marketing high-CFP food products to this consumer base.

**B. EPG's Critical Role in Our Products**

5. Lighten Up Foods began using EPG on January 1, 2025, after extensive research into ingredients that could enable us to create truly low-calorie sauces without sacrificing quality. EPG proved to be the only ingredient that could deliver the specific combination of properties our products require.

**C. Extensive Research Confirmed No Alternatives Exist**

6. Before selecting EPG, I evaluated numerous potential fat replacements and calorie reduction ingredients, including:

- Traditional fats and oils (which contain 9 calories per gram, making low-calorie claims impossible)
- Modified starches (which created unacceptable texture and mouthfeel)
- Protein-based fat replacers (which denatured during thermal processing)

7. None of these alternatives could provide the combination of calorie reduction, texture, stability, and consumer acceptance that EPG delivers. Each alternative failed in one or more critical aspects that would have prevented us from creating a commercially viable product.

**D. EPG's Premium Pricing Reflected Its Unique Value**

8. Because EPG is both uniquely suited to our formulation and essential to our product, we would not consider switching to alternatives even if the price of EPG increased by 15% or more. Even if the price of EPG were to double, we would still use EPG because there are no other alternatives available that I am aware of.

**E. Business Investment in EPG-Based Development**

9. In reliance on continued EPG access, Lighten Up Foods made significant business commitments:

- A $26,000 deposit for expanded production capacity
- $3,600 in marketing campaigns highlighting our low-calorie positioning
- $9,000 to validate whether our contract manufacturer's machinery could process EPG, a necessary step before committing to production

10. Lighten Up's business model was built around developing EPG-based foods that maximize caloric efficiency for this consumer base. Our EPG-based low-calorie sauce was the first product in this strategy; the high-CFP protein bar was the next planned product line. Lighten Up was not a sauce company that happened to explore protein bars, but an EPG-based food company whose initial product happened to be a sauce.

**F. High-CFP Protein Bar Development**

11. On January 16, 2025, I negotiated terms with OWN Your Hunger LLC ("OWN") over a video conference call under which OWN would provide a modified version of its high-CFP protein bar formulation to Lighten Up for commercial sale under the Lighten Up brand. OWN's formulation had already reached approximately 70% CFP and was in final stages of development. Under the arrangement, Lighten Up would sell products under its own brand using its established consumer audience and retail distribution channels, and OWN would supply the formulation, expertise, and handle the manufacturing in exchange for a one-time payment, ongoing royalties, or marketing services for OWN's EPG-based products.

12. Because OWN's formulation was already developed, Lighten Up's protein bar was equally ready for release. My version would only need to be modified to meet the higher protein preferences of my audience, with a CFP target of approximately 70%. Lighten Up expected to

launch its high-CFP protein bar in mid-to-late 2026, near the same time OWN would release its own high-CFP protein bar.

13. Epogee was directly involved in Lighten Up's product development, providing R&D assistance and signing mutual Non-Disclosure Agreements for formulation confidentiality. Epogee sent EPG pails at no cost during R&D phases, expecting payment only for production orders. Epogee shipped three separate EPG shipments to Lighten Up and its contract manufacturer in January, February, and April 2025. The April 2025 shipment occurred less than six weeks before Defendants terminated all non-affiliated EPG customers.

14. Between January and February 2025, OWN provided Lighten Up with EPG-based formulation assistance for our sauce and offered to handle initial production runs for all of Lighten Up's EPG-based products at OWN's manufacturing facility. Our EPG-based low-calorie sauce had reached the trial production run phase for distribution through established retail channels to the same consumers David Protein targets, demonstrating Lighten Up's ability to formulate EPG-based products and advance them toward commercial distribution.

15. Lighten Up was also working with its contract manufacturer's in-house formulator and food scientist to develop EPG-based product formulations independently. Epogee's own food scientists were simultaneously providing formulation assistance to Lighten Up as part of the R&D collaboration. Between my co-packer's formulation team and Epogee's technical support, Lighten Up had the independent capability to develop a high-CFP protein bar without reliance on OWN or other company's formulation.

**G. The Sudden Supply Disruption**

16. On March 25, 2025, I became aware that EPG started to become unavailable due to "raw material shortages," with a vague estimate that supply might resume in May 2025. This announcement was unexpected: no prior indication of supply issues had been communicated, and

no external events such as natural disasters or supplier bankruptcies explained the sudden shortage.

17. Despite repeated attempts to obtain more specific information about the shortage and timeline for resolution, we received only vague responses from Epogee.

18. On May 29, 2025, we received formal notification that Epogee would no longer accept new purchase orders from Lighten Up Foods. The letter indicated this decision was a result of the acquisition by Linus Technology, Inc (also known as “David Protein”).

**H. Failed Attempts to Continue Without EPG**

19. Following the supply termination, I immediately began efforts to reformulate our sauce products without EPG. These efforts were unsuccessful: products lost their characteristic creamy texture, suffered oil separation within days, exhibited uneven flavor distribution, and calorie content increased beyond levels permitting "low-calorie" labeling as required by the FDA.

20. After months of reformulation attempts and significant additional investment, we have concluded that producing our sauces without EPG is not commercially feasible. Similarly, our high-CFP protein bar development with OWN was halted at the same time because no substitute for EPG exists that would allow us to achieve a CFP above the physical barrier. We face a choice between abandoning our product lines or producing inferior products that would damage our brand reputation.

**I. Financial Impact and Business Consequences**

21. The loss of EPG access has resulted in immediate and severe financial consequences:

- $9,000 in research and development costs that cannot be recovered
- $26,000 production deposit that cannot be utilized

- $3,600 in marketing expenses for products we cannot produce
- Approximately $14,000 per month in fixed costs and lost revenue from idle production capacity beginning June 1, 2025
- Damage to customer relationships and retail partnerships

22. Beyond these quantifiable losses, we face the potential permanent closure of our business. Without EPG, we cannot produce the sauce products that define our company, and our high-CFP protein bar, which was on track for a mid-to-late 2026 launch, cannot proceed.

**J. Conclusion**

23. Based on my direct experience operating a business dependent on EPG, I can state with certainty that this ingredient has no functional substitutes. The termination of EPG supply does not force us to choose a different ingredient, but forces us to exit both our sauce market and the high-CFP protein bar market that Lighten Up was preparing to enter. This is the reality faced by every company that built products around EPG's unique properties.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 27, 2026, in Sacramento, California.
/s/Blake Sanburg
Blake Sanburg
Founder and Chief Executive Officer
Lighten Up Foods LLC