# DECLARATION OF PETER HAN IN SUPPORT OF PLAINTIFFS' SECOND AMENDED COMPLAINT

I, Peter Han, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

## A. Introduction and Background

1. I am the Founder and Chief Executive Officer of Bricks Protein, a company that manufactures and distributes protein bars. I have held this position since founding the company and have direct knowledge of all matters discussed in this declaration.

2. I submit this declaration to describe my company's experience with EPG (Esterified Propoxylated Glycerol), how this ingredient enabled us to create a revolutionary protein bar that competed directly with David Protein bars, and the devastating impact of losing EPG access after Defendants' acquisition of Epogee LLC.

3. I am not a plaintiff in this action but provide this declaration to demonstrate the industry-wide harm caused by Defendants' monopolization of EPG.

## B. EPG's Unique Role in Protein Bar Innovation

4. Bricks Protein selected EPG after extensive research into creating a protein bar that could deliver high protein content with significantly reduced calories while maintaining the indulgent taste and texture consumers expect. EPG was the only ingredient that made this possible.

5. EPG provided the soft, chewy texture that prevented the dry, chalky mouthfeel common in protein without the need to add traditional high-calorie fats

6. EPG provided the binding system that held ingredients together without adding sugar or calories

7. EPG provided even distribution of flavors, masking the bitter notes from protein isolates

8. EPG provided the satisfying "bite" and mouthfeel of traditional bars while substantially reducing calories

9. EPG provided prevented the hard, rock-like texture that develops in many protein bars over time that use soluble fibers.

10. Our entire formulation and production process was engineered around EPG's specific properties. We invested heavily in understanding how EPG interacted with various protein sources, developing proprietary methods that maximized its effectiveness.

**C. Competing with David Protein**

11. With EPG as our key ingredient, Bricks Protein developed bars that directly competed with David Protein's products. Our bars offered comparable protein content and calorie profiles, often at more competitive prices. We were building significant market share and had secured commitments from several major retailers.

12. The protein bar market is highly competitive, but EPG gave us the ability to match David Protein's nutritional profile while offering unique flavors and textures. We were one of the few companies that could genuinely compete in the low-calorie, high-protein segment.

**D. No Viable Alternatives to EPG**

13. Throughout our product development and again after losing EPG access, we tested every conceivable alternative. These alternatives include:

14. Traditional fats and oils (increased calories beyond acceptable levels)

15. MCT oils and modified fats (still too high in calories, poor binding properties)

16. Protein-based fat replacers (created dry, powdery texture)

17. Fiber and other binding syrups (caused severe digestive issues, created hard texture)

18. We specifically evaluated combinations of ingredients trying to replicate EPG's multiple functions. Every attempt failed because:

19. No single ingredient provides texture, binding, flavor masking, and calorie reduction

20. Combining multiple ingredients created formulation conflicts and stability issues

21. The resulting products were either too high in calories, had unacceptable texture, or caused digestive problems

22. The protein bar category presents unique formulation challenges. High protein content naturally creates dry, chalky textures. Most bars compensate with high-calorie fats or sugary syrups. EPG was the only ingredient that solved this problem while maintaining low calories.

**E. Economic Proof of EPG's Unique Value**

23. Like all EPG customers, we paid approximately $6 per pound despite conventional fats costing much less.

24. The premium price was irrelevant because EPG enabled our entire business model. Without EPG, we couldn't create bars that competed in the premium low-calorie protein segment

25. If Epogee were to raise its prices by 15% for EPG, we would immediately accept the price increase without considering alternatives.

26. The fact that David Protein's parent company paid $75 million to control EPG rather than use readily available alternatives proves what we learned through extensive testing that EPG cannot be replaced.

**F. Termination of EPG supply**

27. 15. On May 29, 2025, we received a termination letter confirming Epogee would no longer accept orders due to the acquisition by David Protein.

**G. Forced Reformulation and Market Exit**

28. After losing EPG access, we sought alternatives that would provide the same functionality as EPG, but failed to find an equivalent substitute.

29. We considered reformulation, which would force us to exit the unique market that EPG provided, allowing us to compete in an already highly competitive field of protein bars

30. Our reformulated bars cannot compete with David Protein's EPG-based products

**H. Direct Competition Eliminated**

31. The protein bar market has been fundamentally altered by Defendants' monopolization

32. David Protein now faces no meaningful competition in the low-calorie, high-protein bar segment.

33. We were building a sustainable business competing directly with David Protein. Our retail partnerships, customer base, and growth trajectory demonstrated healthy competition in the market. Defendants eliminated this competition not through superior products or pricing, but by monopolizing the essential ingredient we all needed.

**K. Conclusion**

34. Based on my direct experience competing in the protein bar market, I can state definitively that EPG has no functional substitutes. It is not merely a preferred ingredient - it is the essential input that enables low-calorie protein bars with acceptable taste and texture.

35. Defendants' monopolization of EPG has eliminated competition in the premium protein bar segment. They have succeeded not through innovation or efficiency, but by denying

competitors access to the one ingredient that enabled fair competition. This conduct has harmed consumers, competitors, and the natural evolution of healthier food options.

36. The protein bar market demonstrates the anticompetitive effects of Defendants' conduct: they paid $75 million to eliminate competition they couldn't beat through normal business means. This should not be permitted to stand.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 27, 2025, in Detroit, Michigan.

/s/Peter Han
Peter Han
Founder and Chief Executive Officer
Bricks Protein