UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OWN YOUR HUNGER LLC, LIGHTEN UP FOODS LLC, DEFIANT FOODS LLC,<br><br>*Plaintiffs*,<br>v.<br><br>LINUS TECHNOLOGY, INC., EPOGEE LLC, PETER RAHAL,<br><br>*Defendants*. | Case No. 1:25-cv-04544-VM |

**DECLARATION OF RUZ SAFAI IN SUPPORT OF PLAINTIFF'S THIRD AMENDED COMPLAINT**

I, Ruz Safai, hereby declare as follows:

**A. Introduction and Personal Capacity**

1. I am the Founder and CEO of OWN Your Hunger LLC ("OWN"), a Delaware limited liability company. OWN manufactures and distributes low-calorie food products, including high-CFP protein bars, protein dessert squares, and nut butter spreads, using EPG (Esterified Propoxylated Glycerol), a patented fat replacement ingredient produced exclusively by Epogee LLC.

2. OWN has been in the protein bar market since 2018. OWN holds a federal trademark for "high-protein cereal bars" (USPTO Reg. No. 5651473). The United States Patent and Trademark Office accepted OWN's Section 8 and Section 15 declarations for this trademark in August 2025, confirming continued use in commerce.

3. I am one of the Plaintiffs in this case.

4. I make this declaration in support of Plaintiffs' Third Amended Complaint against Defendants Linus Technology, Inc. ("Linus"), Epogee LLC ("Epogee"), and Peter Rahal ("Rahal").

5. Except where otherwise stated, the facts set forth herein are within my personal knowledge. Where stated on information and belief, I believe such information to be true.

**B. Reference to Third Amended Complaint and Consolidated Facts**

6. I have reviewed the Third Amended Complaint, and the consolidated statement of facts filed in this action. I incorporate by reference all factual allegations therein, including but not limited to the history, development, and market importance of EPG, the acquisition by Defendants, and the exclusionary conduct alleged.

7. I have personally reviewed each exhibit attached to the Third Amended Complaint. To the extent those exhibits reflect communications, orders, pricing, or other documents involving OWN or Epogee, I can confirm based on my personal knowledge that they are true and accurate copies of the original documents.

8. To avoid unnecessary repetition, I do not restate herein the general background facts already set forth in the complaint, except as necessary to describe my personal experiences and specific injuries.

**C. OWN's Protein Bar Development and EPG Collaboration**

9. Beginning in approximately 2019, OWN collaborated with Epogee to develop EPG-based food products. Epogee provided food scientists and formulation support for OWN's

EPG-based products. OWN invested over $320,000 in EPG-specific research and development over the course of this collaboration.

10. OWN commercially manufactured and sold EPG-based protein squares through retail channels. OWN's protein squares used a plastic shell format and contained EPG as a core ingredient. Sales of OWN's protein squares were substantially increasing in the period before Defendants terminated EPG supply, with consumer demand exceeding available supply.

11. Before developing its EPG-based protein squares, OWN had previously designed, developed, manufactured, and sold a conventional protein bar. This protein bar was very similar to David Protein's Gold line of bars, except it was made without EPG.

12. Epogee selected OWN's protein squares as a showcase product for industry trade shows, featuring them to prospective customers as a demonstration of EPG's ability to deliver high flavor at low calorie counts. Epogee published press releases celebrating how OWN successfully used EPG. Epogee often utilized OWN's EPG-based products to showcase to customers and investors.

13. OWN provided free product samples to Epogee to demonstrate the potential of EPG in trade shows and grow its market exposure. Epogee relied on OWN for specific information that would help Epogee grow, such as providing shelf-life test results required for Epogee to expand EPG to European markets.

14. During various meetings, Epogee executives consistently assured me that the best thing OWN can do to help expand the EPG market is to continue growing and to continue developing innovative products around EPG as the key input ingredient. On June 21, 2022, in Calgary, Alberta, Canada, Epogee's founder and president expressed to me that "OWN need

only be concerned with growing its EPG-based product portfolio, and not to worry about EPG supply".

15. Drawing on its protein square platform, OWN developed "MarvelCube," a 60-gram high-CFP protein bar based on its 42-gram protein square. The bar retained the plastic shell packaging of OWN's protein squares but contained substantially higher protein content and a nutritional profile targeting approximately 70% CFP. The larger format and increased EPG concentration allowed OWN to shift the calorie-to-protein ratio substantially in favor of protein relative to its existing square. By the final stages of development, OWN's bar had reached approximately 70% CFP.

16. The MarvelCube was in the final stages of development and testing when Defendants terminated EPG supply. OWN expected to launch the product in 2026 through retail channels where it had established distribution at a target retail price of $2.30 per bar.

17. OWN also developed and sold a line of EPG-based spreads, originally formulated as an ingredient for its protein bars, that gained independent commercial traction as a low-calorie peanut butter replacement. OWN is currently best known for its half-calorie, full-flavor nut butter spreads made with EPG. To my knowledge, OWN is the sole remaining manufacturer of EPG-based half-calorie, full-flavor nut butter spreads serving the consumer market.

18. Even apart from the MarvelCube, OWN's existing protein squares would have needed only a relatively simple formulation change to increase their CFP ratio to compete in the high-CFP protein bar tier.

19. It is my belief that OWN, through the development of its EPG-based products that were used as showcase examples of what EPG was capable of, played a significant role in increasing the valuation of Epogee and the market adoption of EPG.

20. OWN operates its own Canadian Food Inspection Agency-approved and FDA-compliant manufacturing facility equipped with machinery custom-modified to process EPG. OWN's facility is capable of producing EPG-based food products at commercial scale without reliance on a third-party co-packer. OWN's six years of continuous EPG formulation work, spanning protein squares, spreads, and protein bars, gave OWN direct experience with EPG's processing requirements, including temperature sensitivity, mixing parameters, and shelf-stability optimization. OWN also provided EPG-based formulation assistance to other Epogee customers, including Lighten Up Foods, and offered to produce EPG-based products for those customers at OWN's facility.

21. By the time Defendants terminated EPG supply, OWN had all the capabilities necessary to enter the high-CFP protein bar market: a fully developed formulation at approximately 70% CFP, a CFIA-approved and FDA-compliant manufacturing facility with EPG-specific equipment, six years of commercial EPG formulation experience, established retail distribution channels, a target retail price of $2.30 per bar, and a planned 2026 launch date. OWN lacked only continued access to EPG.

**D. Collaboration with Lighten Up Foods**

22. On or about January 16, 2025, OWN and Lighten Up negotiated terms over a video conference call under which OWN would provide a modified version of its high-CFP protein bar formulation to Lighten Up for commercial sale. These negotiations included a one-time payment, royalties, or marketing exposure for OWN in exchange for ongoing development of the high-CFP protein bar and other high-CFP products. Lighten Up would bring its established

consumer audience and retail distribution channels; OWN would supply the already-developed EPG-based formulation, and would handle manufacturing.

23. Beginning in approximately January 2025, OWN and Lighten Up Foods exchanged detailed EPG formulation techniques over a period of several months. OWN provided Lighten Up with formulation assistance for both its planned high-CFP protein bar and its other EPG-based products, drawing on OWN's years of commercial protein bar development experience, including its formulation work with EPG-based protein squares and its high-CFP MarvelCube bar.

24. OWN would supply the high-CFP protein bar formulation itself, having already developed the MarvelCube to approximately 70% CFP. Lighten Up expected to launch its variant in mid-to-late 2026, nearly simultaneously with OWN's own MarvelCube launch, once OWN had sufficient EPG supply to support production for both product lines.

**E. Uniqueness and Irreplaceability of EPG**

25. OWN has relied exclusively on EPG as a key ingredient in our low-calorie food products since 2019, when we first started research and development with EPG. All our product formulations and manufacturing processes are specifically designed around EPG's unique properties.

26. I am not aware of any known alternative to EPG that can provide its unique fat replacement properties that allow us to make all the claims we currently make in our foods.

27. In the five years that I have developed foods with EPG, I have tried using various fibers, sweeteners, and alternate high-calorie oils in order to be aware of any potential alternatives to EPG. None of these substitutes were able to replicate the functionality provided

by EPG, namely its binding properties and its ability to lower calories in foods while simultaneously providing a creamy texture.

28. I have been in meetings with numerous food scientists, all of them confirming EPG (or a functional alternative to EPG) cannot be easily replicated unless they received substantial funding and a two-year timeline, even if the patents for EPG were not a factor.

29. In a September 17, 2025 interview published in Men's Health magazine, Defendant Rahal confirmed that his team "considered everything from almond butter to beef tallow, but they all had drawbacks". This is consistent with my experience: in over five years of product development with EPG, I have not found any alternative ingredient that replicates the combination of calorie reduction, binding properties, and creamy texture that EPG provides.

**F. EPG Supply History and Course of Dealing**

30. OWN maintained a continuous EPG supply relationship with Epogee for more than six years, from approximately 2019 through March 25, 2025. Beginning no later than January 2020, OWN placed regular paid purchase orders for EPG at approximately monthly intervals, with quantities steadily increasing over time.

31. As a documented example of this regular ordering pattern, in the fourteen-month period from January 22, 2024 through March 27, 2025, OWN placed eleven separate EPG orders, averaging one order every forty-three days. These orders included both EPG Confectionery and EPG Spreadable formulations. OWN's final order was placed on March 27, 2025, two days after Epogee's March 25, 2025 announcement that EPG was unavailable. Epogee rejected this order on the ground that it was not a "confirmed" purchase order.

32. Prior to March 25, 2025, we consistently received EPG supplies from Epogee LLC under standard terms: 7 to 10 business day lead times and no deposits for orders under 5,000 pounds, and 30-day lead times for larger orders exceeding 5,000 lbs, with reasonable 50% deposit terms.

33. During a video meeting with Epogee a few weeks prior to March 25, 2025, I communicated to Epogee that our order volume is projected to double by October of 2025 based on increased demand for our EPG-based products.

34. Beginning as early as January 2021, Epogee requested OWN's anticipated EPG volume needs each calendar year. OWN provided these projections, including its plans to develop protein bars with EPG-based formulations, and Epogee incorporated them into its production campaign planning and raw material procurement scheduling. This annual planning cycle continued through the duration of the relationship.

35. In 2022, when Epogee substantially raised the price of EPG by 50%, we did not seek alternatives to EPG, because no other alternatives exist.

36. Even if the price of EPG were raised 15%, we would still use EPG as a key input ingredient, because no other alternatives exist.

37. Because our entire business and branding is built around EPG, if the price of EPG were to double, we would have to accept the price increase or shut down our business.

38. If we had to reformulate our products without EPG, they would significantly lose the functional claims that make these products appealing to our customers. Our peanut butter spread, known for having half the calories as traditional peanut butter but still tasting like traditional peanut butter, would no longer exist if EPG was no longer available. Our high-CFP

protein bar development would be impossible, because no other known ingredient can achieve the calorie-to-protein ratio that EPG enables.

39. The permanent loss of access to EPG supply would require us to completely exit the market made possible by EPG and lose our entire business as a result.

40. During more than six years of continuous supply from 2019 through May 2025, Epogee never offered any customer, including OWN, a long-term supply agreement, minimum order commitment, annual purchase commitment, or advance notice provision. Epogee maintained no standard supply contract and did not present supply contracts as an available option to any customer. All EPG purchases were made through individual purchase orders.

**G. EPG Production Campaigns and Supply Cutoff**

41. Based on my personal knowledge and direct observation of manufacture dates printed on shipping containers of EPG received from Epogee over multiple years, EPG is manufactured in discrete 24-month production campaigns. Shipping containers of EPG in OWN's possession bear manufacture dates of March 2023, placing the next production campaign at approximately March 2025.

42. Starting March 25, 2025, we noticed cessation of EPG supply, initially blamed on temporary raw materials shortages, which Epogee LLC predicted would be resolved sometime in May 2025.

43. This supply disruption coincided with Defendants' acquisition of Epogee LLC, about which we were not informed until after public disclosure.

44. After March 25, 2025, I repeatedly attempted to communicate with Epogee LLC to restore supply or obtain reasonable timelines, but received no meaningful responses until May

29, 2025, when Epogee LLC formally announced their decision that they would no longer honor new purchase orders from OWN Your Hunger LLC, specifically as a result of the Defendants' acquisition.

45. On May 29, 2025, after inquiring about pending purchase orders, we were informed that we did not have any purchase orders that were previously confirmed, and would no longer be eligible to receive any EPG going forward.

46. Had Defendants offered reasonable alternatives such as minimum order quantities (MOQ), advance purchase commitments, or pooled ordering arrangements, OWN would have readily participated to meet volume requirements. Many of our other suppliers routinely enforce MOQ and tiered pricing, which are legal and industry standard practices that we already readily accept. Our willingness to commit to larger purchase volumes through such arrangements demonstrates that total exclusion was unnecessary to achieve any legitimate business efficiency.

**H. Defendants' Production Capacity and Supply Contradictions**

47. Defendants' discovery responses dated October 6, 2025 state that Defendants increased EPG production capacity from 2.4 million pounds annually before the acquisition to 8.6 million pounds annually at the time of the responses.

48. OWN's annual EPG requirement of approximately 10,000 pounds represents approximately 0.12% of Defendants' stated current annual production capacity of 8.6 million pounds.

49. In their October 6, 2025 discovery responses, Defendants identified ten non-affiliated companies as third-party "customers" in addition to David Protein. Of these ten companies, seven received zero EPG after the acquisition.

50. Those same discovery responses stated that Defendants had “zero pounds of EPG readily available to supply to third-party customers”.

51. Seven days after serving those responses, on October 13, 2025, David Protein sent a promotional email and published website content announcing “Back in Stock” status across their product line.

52. Defendants’ discovery responses further stated that they were able to reallocate EPG supply “within the next week” when major retailers such as Walmart and Target reduced their orders. Despite this demonstrated ability to reallocate supply on short notice, Defendants maintain that zero pounds are available for any of their terminated customers.

**I. Harm to OWN**

53. Since Defendants cut off EPG supply starting in March 2025, OWN has been unable to manufacture any EPG-containing products. OWN exhausted all EPG inventory that existed at the time of the cutoff. OWN’s production facility has been idle since approximately June 2025.

54. As a direct result of this supply cutoff, OWN Your Hunger LLC has been forced to halt production of its EPG-formulated nut butter spreads, protein squares, and high-CFP protein bar development, resulting in:

- Wasted research and development expenditures totaling at least $320,000.
- Losses of at least $60,000 in revenue per month starting April 1, 2025.
- Losses of at least $12,000 per month starting April 1, 2025, related to idle fixed costs and operating expenses (i.e., facility lease, fulfillment service contracts, etc.).
- Lost manufacturing time totaling approximately 180 hours per month, starting April 1, 2025.
- Layoffs of 4 production staff.

- Canceled orders with retailers and customers valued at approximately $2,000 per month.
- The inability to fulfill a currently open purchase order of over $12,000.
- Immediate need to halt all marketing efforts due to rapidly dwindling inventory.

55. These losses have caused immediate and irreparable harm to our business, including damage to customer relationships, loss of market share, and risk of permanent closure.

56. After Defendants formally terminated OWN's EPG supply in May 2025, OWN's revenue from EPG-based products declined by 100%. Prior to May 2025, OWN sold products through retailers such as Amazon, TikTok Shop, and Netrition. Since the EPG cutoff, all retailers delisted OWN's products due to inability to maintain supply, which impacted OWN's general category rankings.

57. I am aware that other manufacturers of EPG-based food products exited their markets after Defendants cut off EPG supply starting in March 2025 and formally terminated all customers in May 2025, including manufacturers in protein bars, confections, and other categories. To my knowledge, none of these manufacturers have returned to the market, except to the extent any products made with EPG inventory produced before March 2025 remained in distribution channels.

58. If OWN is forced to exit permanently due to lack of EPG access, OWN will face significant barriers to return. Online retail platforms that delisted OWN's products after months of stockouts require demonstrated supply reliability before relisting products. OWN has already laid off production staff. The specialized expertise in formulating and producing EPG-based products takes months to rebuild.

**Harm to the Consumer Products Market**

59. Based on my knowledge of the EPG-based foods industry, communications with other manufacturers, and monitoring of retail channels, I am not aware of any EPG-containing consumer food products from independent third-party manufacturers currently available on retail shelves. The EPG-based consumer food products currently available for purchase that I am aware of are manufactured by David Protein for their own branded product lines.

60. I am not aware of any protein bar in in the market that exceeds 50% Calories From Protein ("CFP") that still maintains the core structural and flavor characteristics required for a protein bar, other than protein bars made by David Protein.

61. I am not aware of any third-party EPG-based products on retail shelves other than those manufactured by David Protein, except to the extent any residual inventory manufactured using EPG obtained before March 25, 2025 (when EPG was still available) remains in distribution channels.

62. OWN and the other two plaintiff companies are not currently manufacturing or producing new EPG-based products due to lack of EPG supply.

**J. Conclusion and Request for Relief**

63. Based on my direct experience operating a business dependent on EPG, I can state with certainty that this ingredient has no functional substitutes. The termination of EPG supply does not force us to choose a different ingredient but forces us to exit our market entirely. This is the reality faced by every company that built products around EPG's unique properties.

64. Through this lawsuit, we request the relief as outlined in the Plaintiffs' Third Amended Complaint.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 28, 2026, in Calgary, Alberta, Canada.

/s/ Ruz Safai
Ruz Safai
Founder and Chief Executive Officer
OWN Your Hunger, LLC